MARION E. FORBES, ADMINISTRATRIX OF THE ESTATE OF PETER FORBES, DECEASED, PLAINTIFF IN ERROR, v. WILLIAM F. SWEESY AND OTHERS, DEFENDANTS IN ERROR.

Estate by Curtesy: LEASE. In the year 1872 the wife of H. owning certain real estate in her own right, leased the same for the period of five years, and soon thereafter died. F. having recovered judgment against the husband, levied upon the husband's estate by curtesy in the demised premises, and sold the same upon execution during the existence of the lease, F. becoming the purchaser. The sale was confirmed, a deed made

to F., who thereupon brought an action of ejectment against the lessees. *Held*, that the plaintiff has no right to the possession of the premises until after the expiration of the lease.

ERROR from the district court of Douglas county. The opinion states the case.

*John L. Webster* and *George W. Doane*, for plaintiff in error.

1. The. law has become substantially settled that while the married women's acts excluded the husband during her life from control or of interference with his wife's separate, real, and personal estate, and give to her alone the power of disposition by deed or will, yet they left the husband the right of curtesy in her real property which remained undisposed of and unbequeathed at her death. Schouler on Domestic Relations, p. 196. *Hatfield v. Sneden*, 54 N. Y., 280. *Cole v. Van Riper*, 44 Ill., 58. The better opinion and the weight of authority is, that these acts, although inconsistent with the estate by curtesy initiate, do not defeat the husband's curtesy at the death of the wife. *Porch v. Tries*, 3 C. E. Green, 208.

2. No reported case is cited by defendants, nor do we believe any can be found, where a lease operates to defeat curtesy. A lease for years is not a disposition of the title to the property, but is simply granting the use of it to the lessee for a period of time. It is not an alienation of the land as spoken of in the authorities. The title to the land still remains in the wife. In such case and in the case at bar the wife died seized in her right of an estate of inheritance in the land, and this gives the curtesy to her husband. The authorities as cited by plaintiff and defendants in their briefs go only to the extent that curtesy initiate may be defeated by an alienation of the land, but if the

land is not alienated at her death, curtesy consummate attaches.

*E. Wakeley* and *John D. Howe*, for defendants in error.

When counsel admit that the curtesy existed in the wife's real property, "which remained undisposed of and unbequeathed at her death," they concede that the position of the court below is sound. To say that a married woman cannot make a lease that shall survive her is to say that she cannot convey her property, or devise it, and that her power of disposition is no power at all. No one could take her lease with safety for a term of twenty-four hours; and since the husband cannot use or dispose of it, her real estate is divested of its present value. It can be of no value till she is dead! And this is reform and progress in the direction of the disenthrallment of a married woman's estate with a vengeance. And she cannot make a devise of property that shall have any effect after her death! Truly, she would seem to have no valuable interest in her real estate, whether she be "dead or alive." It would seem that she might plow and sow, but could reap only the whirlwind. *Matter of Winne*, 2 Lans, 21. *Ransom v. Nichols*, 22 N. Y., 110. *Barnes v. Underwood*, 47 N. Y., 351. *Pool v. Blakie*, 53 Ill., 495. *Staples v. Brown*, 13 Allen, 64.

MAXWELL, CH. J.

On the twenty-first day of January, 1876, Peter Forbes filed his petition in the district court of Douglas county, alleging "that on the —— day of July, 1875, he became and ever since has remained, the owner of the legal estate for the life of one Milan Hunt as tenant by the curtesy, and which estate still con-

tinues and is undetermined, in the following lands and tenements, to-wit: The east forty-four feet of lot one, in block one hundred and eighteen, in the city of Omaha, in the county of Douglas, and state of Nebraska, and is entitled to the possession of the same, and that said defendants unlawfully keep him out of the possession thereof," etc.   The petition also alleges that the defendants have received the rents and profits for the said real estate since July, 1875, amounting to the sum of $750.   The plaintiff prays judgment for the possession of said real estate, and for the recovery of said sum of $750.

The defendants answered the petition, alleging that "on or about the twentieth day of September, 1872, said defendants, Sweesy and Culbertson, entered into possession of said property under a lease in writing of about that date, made, executed, and delivered in due form of law by Elizabeth Hunt, the then owner of the fee simple of said real estate, but now deceased, whereby said premises were leased and demised to the said Sweesy and Culbertson for the term of five years next after that date; that on or about the first day of May, 1873, and before the commencement of this suit, said Sweesy and Culbertson leased and demised said premises to Tyler for the remainder of said term of five years, and that Tyler entered into possession of said premises under said leasing, and has ever since remained in possession thereof thereunder."

During the pendency of the action in the district court the plaintiff died, and the cause was revived in the name of Marion E. Forbes as administratrix.

In September, 1878, the case was submitted to the court without the intervention of a jury, and the court found "that the defendants, at the time of the commencement of this action, had possession of the real estate described in the petition, under and by virtue of

a lease thereof for the term of five years from and after the twenty-first day of September, A.D. 1872, executed on that day by one Elizabeth Hunt, then the wife of one Milan Hunt. That said Elizabeth Hunt was thus seized in fee thereof by conveyance to her in the state of Nebraska, on or about August 9th, 1865, and March 9th, 1866, while she was the wife of said Milan Hunt. That there were living children of said Milan and Elizabeth Hunt, born of their marriage. That said Elizabeth Hunt died after executing said lease, and before the levy of the executions hereinafter named, and before the commencement of this action, leaving said Milan Hunt surviving her. That on the twentieth day of March, 1873, a judgment was rendered in the district court for Douglas county, in favor of Geo. W. Forbes, and against Milan Hunt, for $7,655; that an execution was issued upon said judgment, which was duly levied by the sheriff of said county of Douglas, on the eighteenth day of May, 1875, on the interest of said Milan Hunt as tenant by the curtesy in the lands and tenements described in the petition; that on the twenty-sixth day of June, 1875, the said interest so levied upon was duly sold by said sheriff under execution to the plaintiff's intestate, Peter Forbes, which sale was at the June term of said court, 1875, duly confirmed by said court, and a deed ordered to be made to the said Peter Forbes for said interest so sold by said sheriff, which was done accordingly before the commencement of this suit, and that the said Peter Forbes became thereby vested with whatever interest the said Milan Hunt had in said property as tenant by the curtesy, to which finding the defendant excepts; and the court finds, as a conclusion of law, that said Milan Hunt did not become seized of or entitled to an estate by curtesy or otherwise, or any interest in the said real estate for or during the unexpired portion of

the said term for which the same was leased; and that said levy, sale, confirmation, and deed vested in the said Peter Forbes no right or interest in said real estate for or during the said portion of such term, and that the defendants are entitled to judgment: to which said findings, as conclusions of law, the said plaintiff by his attorneys then and there duly excepted."

The plaintiff filed a motion for a new trial, which was overruled and judgment rendered on the finding. The plaintiff brings the cause into this court by petition in error.

The only question to be considered is—did the sale, confirmation, and deed vest in the plaintiff any right in the premises in question during the existence of the lease?

An estate by curtesy at common law is defined to be that estate to which a husband is entitled upon the death of his wife, in the lands and tenements of which she was seized in possession, in fee simple or in fee tail during the coverture; provided they have had issue born alive and possibly capable of inheriting her estate. 4 Kent Com., 28. Four things are requisite at common law to an estate by the curtesy, viz.: marriage, actual seizin of the wife, issue, and death of the wife. The husband's estate was initiate on issue born, and consummate on the death of his wife.

Our statute provides: "When any man and his wife shall be seized in her right of any estate of inheritance in lands the husband shall, on the death of his wife, hold the lands for his life as tenant thereof by curtesy; *Provided*, That if the wife, at her death, shall have issue by a former husband to whom the estate might descend, such issue shall take the same, discharged from the right of the surviving husband to hold the same as tenant by curtesy." Gen. Stat., 280.

Section two of the act "relating to the rights of

married women," approved March 1, 1871, provides
that: "A married woman, while the marriage rela-
tion exists, may bargain, sell, and convey her real and
personal property, and enter into any contract with
reference to the same, in same manner, to the same ex-
tent, and with like effect, as a married man may in re-
lation to his real and personal property." Does this
statute abrogate tenancy by the curtesy? At com-
mon law the husband was entitled to the possession
and use of his wife's property, whether personal or
real, so long as the marriage relation continued. The
interests held by him in her estates of inheritance were
treated as freehold estates in him, because in case of
the birth of children he would continue to hold dur-
ing life, and in any event during coverture. The hus-
band and wife were both parties to the grant creating
the estate, the wife as tenant in fee, and the husband
as tenant during coverture or life.

The wife was classed with infants and persons of
unsound mind, in regard to her capacity to enter into
contracts. 2 Blackstone Com., 292. Not that she
was less capable of contracting by reason of her mar-
riage, but by the common law the wife, so far as con-
trol of her property was concerned, was but little
better than a slave; the husband acquired her per-
sonal property, the rents and profits of her estate,
the custody of her person, and the right to her ser-
vices. She possessed nothing, and could possess noth-
ing, independently of her husband. The law therefore
deprived her of the capacity of contracting, because
she had nothing in relation to which she could con-
tract, consequently her contracts in relation to leasing
or conveying her estate were absolutely void, and the
only mode in which she could join in the sale, settle-
ment, or incumbrance of her estate was by the pro-
ceeding by fine and common recovery. 2 Blackstone

Com , 355. But the husband alone could make no conveyance nor incumbrance of his wife's estate that would survive him. And upon the death of his wife, if she died without issue born alive, his right to her estate terminated. But as soon as a child was born, the father began to have a permanent interest in the lands; he became one of the *pares curtis*, did homage to the lord, and was called tenant by the curtesy *initiate;* and this estate, being once vested in him by the birth of the child, was not suffered to determine by the subsequent death or coming of age of the infant. 2 Blackstone Com., 127.

But to entitle the husband to an estate by the curtesy the wife must have been seized in fact as well as in deed, and not merely a seizin in law. This seems to have grown out of the practice of livery of seizin and, as is said by the supreme court of the United States in *Davis v. Mason*, 1 Peters, 503, as livery of seizin has become unnecessary, so actual seizin of the wife should be abandoned. But in the case at bar, the wife was in actual possession of the premises by her tenants, the defendants in this action.

In this state, under our statute, issue by the wife is not necessary to complete the right to an estate by curtesy. But the husband's rights during coverture to the use, care, or control of his wife's separate estate have entirely ceased to exist. She may exercise the same control over her estate after as before marriage; and she may, by a conveyance of her estate, entirely defeat his right to an estate by curtesy. So if she lease her estate or any portion of it, his right to an estate by the curtesy in the portion leased is suspended during the existence of the lease, and he takes her estate subject to the contracts which she has made during her life-time in relation to the same. Where, however, she dies without having made any disposition of

her property during her life-time, the rights of her husband to an estate by the curtesy are not affected by the statute. But as the wife had leased the premises in question for a term of years the right of the husband to the possession thereof remained in abeyance during that time. And as the plaintiff claims the legal estate of the husband, under the sale upon execution, confirmation thereof, and deed, he takes no greater rights than those possessed by the husband, and is not enti-· tled to the possession of the premises until after the expiration of the lease. The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.