JOHN BARTON v. ALEXANDER S. McKAY.

FILED APRIL 11, 1893. No. 4923.

1. **Continuance:** AFFIDAVITS: REVIEW. Affidavits used in support of a motion for a continuance in the district court, to be available in the appellate court, must be made a part of the record by a bill of exceptions.

Barton v. McKay.

2. ———: MOTION: COUNTER-AFFIDAVITS. Permitting counter-affidavits to be used on the hearing of such a motion is improper.

3. ———: ———: ———: HARMLESS ERROR. Where such affidavits are used, and the application for a continuance is denied, the judgment will not be reversed for that reason, where the showing of the party making the application, when considered alone, is insufficient to entitle him to a continuance.

4. Conversion: THE EVIDENCE in this case examined and considered, and *held* to support the judgment of the court below, and that the verdict is not excessive.

5. Admissibility of Evidence. The *ex parte* affidavit of W. S. L. was properly excluded from the jury on the trial of the cause, as it was inadmissible under the rules of evidence.

6. Rulings on Admissibility of Evidence: REVIEW. The rulings of the trial court, in not permitting the defendant to answer certain questions propounded to him by his counsel on direct examination, cannot be reviewed by this court, for the reason no offer was made in the trial court to prove the facts which the party complaining assumes the questions would have elicited.

7. Instructions: REVIEW. The supreme court will not review the instructions given to the jury by the court below, nor those asked and refused, where the attention of the court has not been called to them in the motion for a new trial.

8. ———: ———. The instructions to the jury in this case, when considered and construed together, fairly state the law applicable to the issues raised by the pleadings and proofs.

9. ———: ———. The defendant's third request to charge was properly refused, inasmuch as it was covered by other instructions which were given.

ERROR from the district court of Saline county. Tried below before MORRIS, J.

*F. I. Foss*, for plaintiff in error.

*Hastings & McGintie* and *A. S. Tibbets, contra.*

NORVAL, J.

This action was brought in the court below by Alexander S. McKay against John Barton, as sheriff, for the con-

version of a stock of goods seized on two writs of attachment against Lusk Brothers & Co. From a judgment on a verdict in favor of plaintiff for the sum of $2,331.10, defendant brings the cause to this court for review by petition in error.

The first ground upon which a reversal is asked is the overruling of defendant's motion for a continuance of the action on account of an absent witness. The record fails to disclose that there was any abuse of discretion in denying the application. That every presumption is in favor of the correctness of the decision of a trial court, until the contrary is made affirmatively to appear, is elementary. Error is never presumed. Tested by this rule, the decision under consideration must be upheld. The record fails to inform us upon what facts the trial court predicated its decision. It is true the journal entry recites that the motion for a continuance was heard upon affidavits, and the transcript contains a copy of an affidavit made by Mr. Foss, defendant's attorney, as well as copies of other affidavits, which latter, judging from their contents, were made in resistance of the motion, yet there is absolutely nothing to show that any of the affidavits were read or considered on the hearing of the application; hence, they cannot be considered by this court. Our decisions to the effect that affidavits used in the district court at the hearing of a motion, to be available in this court, must be preserved in the bill of exceptions, ought not to be misunderstood, inasmuch as we have so frequently passed upon the question. (*Walker v. Lutz*, 14 Neb., 274; *Tessier v. Crowley*, 16 Id., 372; *Graves v. Scoville*, 17 Id., 593; *Olds Wagon Co. v. Benedict*, 25 Id., 372; *Barlass v. Braash*, 27 Id., 212; *Burke v. Pepper*, 29 Id., 320; *Strunk v. State*, 31 Id., 119; *Van Etten v. Kosters*, Id., 285.)

Even though the affidavit of Mr. Foss should be considered by us, we think the court was justified in refusing to continue the case. Three continuances already had been

granted, one at the March, 1889, term, by consent, and
at the October term of the same year and the March term,
1890, continuances were granted on motion of the defend-
ant, for the purpose of obtaining the testimony of one
William S. Lusk, who was absent from the state. The last
application was based upon the absence of the same wit-
ness, and the affidavit fails to show that either the personal
attendance of Mr. Lusk or his evidence would probably be
obtained if the trial had been postponed or the cause con-
tinued until the next term of the district court. For that
reason the affidavit was insufficient to justify a continu-
ance. (*Polin v. State*, 14 Neb., 540; *Singer Mfg. Co. v.
McAllister*, 22 Id., 359; *Rowland v. Shephard*, 27 Id.,
494.)

Complaint is made because plaintiff was permitted to
file affidavits in resistance of the motion for a continuance.
It is not the proper practice to allow counter-affidavits to
be read at the hearing of such a motion. (*Gandy v. State*,
27 Neb., 707; *Miller v. State*, 29 Id., 437.) But we are
unable to see in what manner the defendant in this case
was prejudiced by the use of counter-affidavits, since, upon
his own showing, if the said affidavit in support of the
motion be considered, he was not entitled to have the trial
postponed. For another reason we cannot say that error,
prejudicial to the defendant, was committed by the receiv-
ing of counter-affidavits, as we have no means of know-
ing what they contained, they not having been made a part
of the record by a bill of exceptions.

It is insisted that the verdict is not supported by the ev-
idence. It appears that the goods in controversy formerly
belonged to the firm of Lusk Brothers & Co., of Friend,
which firm was composed of Abner P. Lusk, William S.
Lusk, and Joseph Boynton. On the 11th day of January,
1888, the partnership, by mutual agreement, was dissolved,
and, by written contract signed by each partner, the partner-
ship property was divided between them. Abner P. took the

real estate and assumed the incumbrances thereon, amount-
ing to about $2,400; William S., for his share, received
the goods in suit, of the value of $2,767.12, also certain
notes and book accounts, and agreed to pay the firm in-
debtedness not secured by the real estate, aggregating over
$2,100, and Boynton received notes and accounts of the
value of some $700. The agreement for dissolution was
duly recorded, and the property of the firm was divided
according to the terms thereof. On the 14th day of Jan-
uary, 1888, William S. Lusk executed and delivered to
the defendant in error, Alexander McKay, his promissory
note for the sum of $2,000, and secured the payment
thereof by giving a bill of sale on the stock of goods in
dispute. McKay took possession under his bill of sale.
Subsequently, on the 17th day of January, 1888, two cred-
itors of the firm of Lusk Brothers & Co. sued out writs of
attachment against the firm, and placed the same in the
hands of plaintiff in error, who levied upon said stock of
goods and sold the same under the writs. At the time of
the levy, McKay was in possession of the stock.

Plaintiff in error insists that the goods were the property
of Lusk Brothers & Co.; that the note and bill of sale
were without consideration, and that they were given for
the purpose of defrauding the creditors of said firm. So
far as the question of ownership is concerned, the facts
bearing thereon are substantially as given above, with the
exception of what we are now about to state. At the trial
Abner P. Lusk testified, on behalf of the defendant below,
that the possession of the goods was never delivered to
William S. Lusk, but that they were turned over to Mc-
Kay with the distinct understanding that he should sell a
sufficient amount to pay the unsecured debts of the firm,
after which the goods remaining unsold were to be deliv-
ered to said William S. Lusk. This testimony is flatly
contradicted by both McKay and Joseph Boynton. They
deny that there was ever any such arrangement, or that it

was ever talked of or mentioned in their presence.   It ap-
pears that the partnership was dissolved on account of
differences which arose between the Lusk brothers.   Prior
to the dissolution, the firm was not being pressed by their
creditors, but as soon as the partnership was dissolved the
creditors took steps to collect their claims.   We are con-
vinced from a reading of the evidence that the possession
of the stock was delivered to William S. Lusk, under and
according to the terms of the contract of dissolution.   It
is uncontradicted that at the time the firm went out of
business, it was indebted to McKay for money loaned, in
the sum of $130.   William S. Lusk, on the 12th of Jan-
uary, 1888, went to McKay, who is a grain dealer in the
town of Friend, and informed him that he had been hav-
ing trouble with his brother and that the firm had been
dissolved; that his brother Abner was going to inform the
creditors of the condition of affairs, and proposed, if Mc-
Kay would make him a loan of $2,000, he would pay the
creditors of the firm.   McKay thereupon agreed to let him
have $1,870, which sum, together with said indebtedness
of $130, was to be secured by a bill of sale upon the stock
of goods.   McKay drew his check on the Merchants and
Farmers bank of Friend for the sum of $1,870, payable to
the order of W. S. Lusk, and gave the same to one H. J.
Huffman, to be by him delivered to said Lusk on the exe-
cution of the note and bill of sale.   The papers were exe-
cuted on January 14, 1888, and the check was delivered
by Huffman to William S. Lusk two days later.

H. J. Huffman testified that the payee of the check in-
dorsed it to him, and requested him to draw the money
thereon, as Lusk was sick and unable to go to the bank;
that the witness indorsed the check, received the money
from the bank, and immediately went to Mr. Lusk's house
and gave it to him.

Frank Unckless, the assistant cashier of the bank, swears
that Huffman presented the check at the bank and he paid

him the sum therein named on January 16. The check was produced on the trial and put in evidence, which contains the indorsements of both Lusk and Huffman, and bears the bank stamp of payment. There is not a syllable of testimony contradicting the payment of the money to William S. Lusk. True, the latter never paid the creditors of the firm, but subsequently absconded. But there is an entire failure of proof to show that McKay had any knowledge that there was any intention on the part of Lusk to defraud the creditors. On the contrary, it shows that McKay acted in the utmost good faith in the entire transaction. No suspicion of fraud can be imputed to him. He took possession under his bill of sale, and began selling, as had been agreed upon, and continued so to do until he was stopped by the attachments. He received from the sale of goods $112.08, and this is the only payment that has ever been made upon his claim of $2,000. From the testimony before us, there is no escaping the conclusion that plaintiff below had a valid lien upon the goods for the balance due him.

There is no foundation for the charge that the verdict is excessive. The sum assessed by the jury was considerably less than the amount of the $2,000 note with ten per cent interest thereon until the first day of the term, at which the cause was tried, after deducting the credit of $112.08. McKay was entitled to a judgment for the full amount of his lien, inasmuch as the same was less than the stipulated value of the property at the time the levies were made.

It is urged that the court erred in excluding from the jury the affidavit of William S. Lusk. Plaintiff in error procured from said Lusk, after he had absconded, and while he was in Colorado, an *ex parte* affidavit relating to the giving of the bill of sale and the payment of the money by McKay. The affidavit was inadmissible under the rules of evidence, and the court did not err in refusing to permit it to be read to the jury. Elaboration on this point is unnecessary.

Complaint is made because the court sustained objections to numerous questions propounded to plaintiff in error by his counsel on direct examination. None of these rulings can be reviewed, for the reason no offer of proof was made in the court below. It has been decided in a vast number of cases in this state that the refusal to permit a witness to answer questions propounded to him on his examination in chief cannot be considered by a reviewing court, unless the party calling the witness makes an offer to prove the facts which he assumes that his question will elicit. It is necessary for the party complaining to state and have the reporter take down what he proposes to prove by the witness, in order that the reviewing court may determine whether the testimony is competent and material. (*Roach v. Hawkinson*, 34 Neb., 658, and cases there cited.) During the entire trial but a single tender of proof was made, and that was upon a matter not discussed in the brief of counsel for plaintiff in error; hence it will not be considered.

Objection is made in the brief of counsel to the giving and refusing of certain instructions. The fourth and eighth paragraphs of the court's charge read as follows:

"4. If you shall find from the evidence that Lusk Bros. & Co. were in business in the town of Friend, and that they dissolved partnership, and that the stock of merchandise belonging to such firm was set over to William S. Lusk, subject to his payment of the debts of such firm of Lusk Bros. & Co., and possession of such stock of goods was under such dissolution agreement given to William S. Lusk, and that thereafter William S. Lusk procured a loan of the plaintiff and turned over to him to secure the payment of such loan the stock of goods in question, and that the plaintiff was in actual possession of such stock of goods, holding the same to secure the repayment of the loan made to William S. Lusk, then the plaintiff would be entitled to recover from the defendant the balance of said loan remaining unpaid, with interest thereon, as you shall find

the same from the evidence, unless you shall find from a preponderance of the evidence that the plaintiff had entered into a fraudulent conspiracy with William S. Lusk with intent to defraud the creditors of Lusk Bros. & Co., or that William S. Lusk borrowed the money of plaintiff and gave his note for the same and the bill of sale of the stock of goods to secure the payment of such notes and interest, to cheat, defraud, hinder, or delay his creditors, and that plaintiff McKay knew of such intent on the part of William S. Lusk.

"8. There is nothing unlawful nor improper for one person to advance or loan to another money, simply because the other is in financial difficulty. Ordinarily, that is the only time that one wants financial assistance; neither is it unlawful to require and receive security therefor. What the law condemns, and under which it affords no protection to a person loaning money or purchasing property, is that the loan or purchase be coupled with the intent to defraud, hinder, and delay the creditors of the party obtaining such loan or making such sale; hence, if you shall find the allegations of the petition to be sustained, as required by these instructions, the plaintiff would be entitled to recover, unless the allegations of the defendant's answer are by you found from the evidence to be sustained by a preponderance of the evidence. If you shall find from the evidence, by a preponderance thereof, that plaintiff had possession of the goods in question as trustee for the benefit of creditors, then the defendant would be entitled to a verdict, except as to any surplus that such goods have been shown by the evidence to have been worth over and above the amount of the attachments held by defendant, and under which he justifies the taking of the goods. And that brings our examination to the other defense, alleging a conspiracy of plaintiff and others to defraud the creditors of Lusk Bros. & Co., and upon this point I read you the instructions asked by the respective parties to this action."

It is believed that the foregoing instructions enunciate correct legal principles and that they were applicable to the issues raised in the case by the pleadings and evidence, especially when construed in connection with other paragraphs of the court's charge to the jury. The rule is that where the instructions, when considered as a whole, fairly state the law, it is sufficient. The objection urged against the fourth instruction is that it omitted to state that if McKay, when he made the loan and took the mortgage, had notice of such facts as would have put a person of ordinary prudence upon inquiry, which, if pursued, would have led to a knowledge of the fraudulent motive of the mortgagor, he would not be protected. A sufficient answer to this contention is that counsel for Barton requested no instruction covering that point. If he was not satisfied with the instruction given, on the ground above stated, he should have presented an instruction covering that question. (*Post v. Garrow*, 18 Neb., 688; *Woodruff v. White*, 25 Id., 753.)

The court gave two instructions numbered 8, while the giving of but one of that number is assigned as error in either the motion for a new trial or the petition in error, and they do not point out or specify the one relied upon. Exception was taken to but one paragraph numbered 8, when the charge was read to the jury, which is the one quoted above. We do not think it subject to just criticism.

It is argued in the brief of plaintiff in error that it was error to give plaintiff's request number 2, which is as follows:

"2. The jury are instructed that fraud is not to be presumed, but must be proved the same as any material fact; and unless the jury are convinced by the evidence deduced in this case, that the possession of McKay was fraudulent, and that said fraud was known and participated in by McKay, then, as to the defense of fraud, you should find for the plaintiff."

44

While this instruction was duly excepted to by the defendant, neither the giving of it nor the 9th instruction can be considered, for the reason they were not assigned for error in the motion for a new trial filed in the court below. (*Schreckengast v. Ealy*, 16 Neb., 510; *Omaha & R. V. R. Co. v. Walker*, 17 Id., 432; *Nyce v. Shaffer*, 20 Id., 507.)

There was no error in refusing to give to the jury the defendant's third request, since the substance of it was incorporated in other instructions requested by him, which were given.

The refusal to charge as requested by the defendant's fourth instruction will not be considered, inasmuch as no objection was made thereto in the motion for a new trial. (*Omaha & R. V. R. Co. v. Walker, supra.*)

A careful examination of the record shows a fair and impartial trial. We fail to discover any prejudicial error in the proceedings and the judgment will be

AFFIRMED.

THE other judges concur.